1   Lawrence A. Cox (CA State Bar # 076140)
    ARNOLD & PORTER LLP
2   777 S. Figueroa Street, Suite 4400
    Los Angeles, California  90017-5844
3   Telephone: (213) 243-4000
    Facsimile: (213) 243-4199
4   Email:  lawrence.cox@aporter.com

5   Sharon D. Mayo (CA State Bar # 150469)
    ARNOLD & PORTER LLP
6   Three Embarcadero Center, 10th Floor
    San Francisco, CA  94111-4024
7   Telephone:  (415) 471-3100
    Facsimile:  (415) 471-3400
8   Email:  sharon.mayo@aporter.com

9   Attorneys for Defendant
    23ANDME, INC.

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

12

13   IRONSHORE SPECIALTY INSURANCE COMPANY,

14              Plaintiff,

15      v.

16   23ANDME, INC.,

17              Defendant.

18

19

20

21

22

|  |  |
|---|---|
| Case Number:  5:14-cv-03286-BLF | |
| NOTICE OF MOTION AND MOTION TO STAY INSURANCE COVERAGE LITIGATION PENDING RESOLUTION OF THE UNDERLYING 23ANDME PERSONAL GENOME SERVICE (PGS) LITIGATION | |
| Date:    January 8, 2015 | |
| Time:    9:00 A.M. | |
| Judge:  Hon. Beth Labson Freeman | |

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on January 8, 2015, or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 280 S. First Street, San Jose, California, before the Honorable Beth Labson Freeman, Defendant 23andMe, Inc. ("23andMe") will, and hereby does, move for an Order staying the above-captioned matter pending the final adjudication of the following actions:

a)   The consolidated actions under lead case *Tompkins v. 23andMe, Inc.*, Civ. A. No. 5:13-5682 (the "Federal Court Cases"), which Federal Court Cases were subsequently dismissed and compelled to arbitration as *Tompkins*, Civ. A. No. 5:13-5682, dkt. 109;

b)   the American Arbitration Association proceedings captioned *Livingston v. 23andMe, Inc.* initiated on or about December 27, 2013 (AAA Arb. 11 122 1662 13);

c)   the American Arbitration Association action captioned *Davis-Hudson v. 23andMe, Inc.* initiated on or about January 13, 2014;

d)   the State of Washington Civil Investigative Demand (CID) dated on or about March 7, 2014; and

e)   any other litigation, arbitration, or investigation involving the matters at issue in the above-referenced cases pertaining to 23andMe's Personal Genome Service ("PGS") (collectively the "Underlying PGS Litigation").

This Motion to Stay Insurance Coverage Litigation Pending Resolution Of The  Underlying PGS Litigation is based upon this Notice of Hearing and Motion To Stay, the Memorandum of Points and Authorities in support thereof, the Declaration of Lawrence A. Cox filed in support thereof, all pleadings and other papers filed in this action and in the Underlying PGS Litigation, and such oral argument as the Court may permit in connection with ruling upon this Motion to Stay.

# TABLE OF CONTENTS

Page

I.  PREFATORY STATEMENT ................................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................................3

    A.  The Underlying PGS Litigation .............................................................................3

    B.  Relevant Policy Provisions .....................................................................................4

III.  ARGUMENT ...................................................................................................................6

    A.  Continued Prosecution Of Ironshore's Declaratory Relief Action Would Prejudice 23andMe's Defense Of The Underlying PGS Litigation ..................................................................................................................6

    B.  The Overlap Of Disputed Facts In The Coverage Action That Pertain To Both Liability And Damages In The Underlying PGS Litigation Mandates A Stay Of Ironshore's Declaratory Relief Case .........................................7

        1.  Overlapping liability issues .........................................................................8

        2.  Overlapping damages issues .....................................................................10

    C.  Ironshore Will Not Be Prejudiced By A Stay .........................................................15

IV.  CONCLUSION ...............................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Brazil v. Dole Packaged Foods, LLC,*
　12-CV-01831, 2014 WL 2466559 (N.D.Cal. 2014) ........................................................ 12

*Brillhart v. Excess Ins. Co. of America,*
　316 U.S.491 (1942) ........................................................................................................... 7

*Commercial Cas. Ins. Co. of Georgia v. Kinann,*
　2003WL 21321373 (N.D. Cal. June 4, 2003) .................................................................. 7

*Guido v. L'Oreal, USA, Inc.,*
　213 WL 3353857 (C.D.Cal. 2013) ................................................................................. 12

*Hinojos v. Kohl's Corp.,*
　718 F.3d 1098 (9th Cir. 2013) ........................................................................................ 11

*Landis v. North Am. Co.,*
　299 U.S. 248 254 (1936) .................................................................................................... 7

*U.S.A. v. Nutrasource, Inc. v. CNA Ins. Co.,*
　140 F.Supp.2d 1049 (N.D.Cal. 2001) ............................................................................... 2

*Unified Western Grocers v. Twin City Fire Ins. Co.,*
　457 F.3d 1106 ................................................................................................................. 14

*Von Koenig v. Snapple Beverage Corp.,*
　713 F.Supp.2d 1066 (E.D.Cal. 2010) ............................................................................. 10

**STATE CASES**

*AIU Ins. Co. v. Superior Court,*
　51 Cal. 3d 807 (1990) ..................................................................................................... 14

*Bank of the West v. Superior Court (Industrial Indem. Co.),*
　2 Cal. 4th 1254 (1992) .................................................................................................... 14

*Buss v. Superior Court (Transamerica Ins. Co.),*
　16 Cal.4th 35 (1997) ................................................................................................... 2, 15

*Colgan v. Leatherman Tool Group, Inc.,*
　135 Cal.App.4th 663 (2006) ........................................................................................ 9, 13

*David Kleis, Inc. v. Supp. Ct. (California Ins. Co.),*
　37 Cal.App.4th 1035 (1995) ............................................................................................. 8

*Foster-Gardner, Inc. v. Natl. Union Fire Ins. Co.*,
    18 Cal.4th 857 (1998) ................................................................. 2

*Fragale v. Faulkner*,
    110 Cal.App.4th 229 (2003) ...................................................... 11

*Great American Ins. Co. v. Superior Court (Angeles Chem. Co., Inc.)*,
    178 Cal.App.4th 221 (2009) ............................................... 2, 7, 15

*Haskel, Inc. v. Super. Ct.*,
    33 Cal. App. 4th 963 (1995) ........................................................ 6

*Horace Mann Ins. Co., v. Barbara B.*,
    4 Cal. 4th 1076 (1998) .............................................................. 15

*Kahn v. Medical Bd.*,
    12 Cal.App.4th 1834 (1993) ........................................................ 9

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*,
    111 Cal.App.4th 102 (2003) ........................................................ 9

*Montrose Chem. Corp. v. Superior Court*,
    6 Cal.4th 287 (1993) ("*Montrose I*") ................................. 2, 7, 8, 15

*Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.)*
    25 Cal.App.4th 902 ................................................................. 6, 7

*People v. Forest E. Olson, Inc.*,
    137 Cal.App.3d 137 (1982) ......................................................... 8

*Starr Piano Co. v. Martin*,
    119 Cal. App. 642 (1932) .......................................................... 12

*United Enterprises, Inc. v. Superior Court (Royal Indem. Co., Inc.)*,
    183 Cal.App.4th 1004 (2010) .................................................... 2, 7

**STATUTES AND RULES**

Bus. & Prof. Code §§ 17200 *et seq.* ............................... 9, 12, 13

Bus. & Prof. Code §§ 17500 *et seq.* ........................... 8, 9, 12, 13

Cal. Civ. Code § 1784 .................................................................. 9

Cal. Com. Code § 2714 ............................................................. 12

Fed. R. Evid. 201(b) ................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    PREFATORY STATEMENT**

As alleged in the Declaratory Relief Complaint filed by Ironshore Specialty Insurance Company ("Ironshore"), 23andMe was notified by Ironshore on February 25, 2014 that "there might be potential coverage for purposes of triggering defense" of the Underlying PGS Litigation, and that Ironshore would therefore defend 23andMe, while reserving its rights.[1]  Additionally, on July 16, 2014 Ironshore notified 23andMe that "there might be potential coverage for purposes of triggering defense" of the CID and additional lawsuits that had been made part of the Federal Court Cases, and that Ironshore would therefore defend 23andMe in those matters as well, while reserving its rights.[2]

Ironshore's coverage correspondence made no mention of any need to seek declaratory relief.  Instead, this correspondence specifically recognized that "a final determination of all the coverage issues raised … *may not be possible until the underlying Actions have been fully resolved*."[3]

Nevertheless, on July 21, 2014, some five days after Ironshore's last coverage letter was written, Ironshore sued 23andMe and alleged in paragraph 1 of its Declaratory Relief Complaint that:

> Ironshore seeks a declaration that it does **not** have a duty to defend or indemnify 23andMe (1) in lawsuits and arbitrations where the underlying plaintiffs seek restitution, disgorgement and other forms of relief that are not insurable under the Policy or the law, and (2) with respect to the Civil Investigative Demand, which does not qualify as a Claim under the Policy.

Not only is Ironshore's Declaratory Relief action inconsistent with Ironshore's coverage correspondence, but the relief Ironshore seeks is contrary to California law.  The Underlying PGS Litigation asserts various claims for ***damages*** pursuant to causes of action that include violation of the California Consumer Legal Remedies Act ("CLRA"), breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, breach of contract, deceit,

---

[1] Cox Decl., Ex. 1 [Complaint], ¶ 30 and Exhibit E to the Complaint, pp. 23-24 and 26.

[2] Cox Decl., Ex. 1[Complaint], ¶ 34 and Exhibit F to the Complaint, pp. 11-12.

[3] Cox Decl., Ex. 1 [Complaint], Ex. E, p. 2; emphasis has been supplied unless otherwise noted.

fraud, and intentional and negligent misrepresentation.[4]   California law requires Ironshore to provide and fund a defense of the *entirety* of each of the underlying cases, including those claims for which there is no potential coverage, as long as a single potentially covered claim exists in the case. *Buss v. Superior Court (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48 (1997); *U.S.A. v. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F.Supp.2d 1049, 1054 (N.D.Cal. 2001) ["Because at least one of the claims in the [underlying] action supported an award of damages, … plaintiffs allege sufficient facts to state a claim for breach of the duty to defend … the [underlying litigation."].

Moreover, the courts disfavor awarding declaratory relief involving insurance coverage issues when such issues turn on disputed facts that are to be determined in underlying litigation.  As a result, a declaratory relief action concerning coverage issues should be stayed "to avoid prejudice to the insured in its defense of an underlying lawsuit."  *Foster-Gardner, Inc. v. Natl. Union Fire Ins. Co.*, 18 Cal.4th 857, 880-881 (1998).  As recognized by the California Supreme Court in *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 301 (1993) ("*Montrose I*"):

> To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action.

Indeed, a stay is *required* if, as in the present case, factual issues to be resolved in the declaratory relief action *overlap* with issues to be resolved in the underlying litigation.  *Great American Ins. Co. v. Superior Court (Angeles Chem. Co., Inc.)*, 178 Cal.App.4th 221, 235 (2009) ["If the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action" (emphasis original)]; *United Enterprises, Inc. v. Superior Court (Royal Indem. Co., Inc.)*, 183

---

[4] *See e.g.* Cox Decl. Ex. 1 [Complaint], Ex.  B [*Livingston v. 23andMe, Inc.* AAA Complaint], ¶¶ 91-111, Ex. C [*Davis-Hudson v. 23andMe, Inc.* AAA Complaint], ¶¶ 59 - 68; Cox Decl., Ex. 2 [*Tompkins v. 23andMe, Inc.* Complaint], ¶¶ 81-111; Cox Decl., Ex. 3 [*Casey v. 23andMe, Inc.* Complaint], ¶¶ 98-109; Cox Decl., Ex. 4 [*Spreter v. 23andME, Inc.* Complaint], ¶¶ 40-53; Cox Decl., Ex. 5 [*Guthrie v. 23andMe Inc.* First Amended Complaint], ¶¶ 84-100; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶47-57 and ¶¶ 64-93; Cox Decl., Ex. 7 [*Dilger v. 23andMe Inc.* Complaint], ¶¶ 64-77; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 52-88; Cox Decl., Ex. 9 [*Newland v. 23andMe Inc.* Complaint], ¶¶ 27-64 and 92-102; Cox Decl., Ex. 10 [*Stefani v. 23andMe Inc.* Complaint], ¶¶ 78-108; Cox Decl., Ex. 11 [*Aeron v. 23andMe Inc.* First Amended Complaint], ¶¶ 90-114.)

1    Cal.App.4th 1004, 1013 (2010) [holding "court was *required to* stay the declaratory relief action

2    once it found overlapping issues"].

3        As 23andMe will demonstrate below, it will be prejudiced if required to litigate coverage

4    issues with Ironshore at this point, particularly due to the overlapping issues of both liability and

5    damages between this case and the Underlying PGS Litigation that make a stay *mandatory* under

6    well established California insurance law.

7    **II.    FACTUAL BACKGROUND**

8        **A.    The Underlying PGS Litigation**

9        23andMe is dedicated to helping individuals access and understand their personal genetic

10   information.  It provides "direct to consumer" genetic testing and services, and a platform through

11   which consumers can participate in genetic research, via its Personal Genome Service (the "PGS").[5]

12   During the period at issue the PGS consisted of three basic components, which were sold for a

13   single purchase price.  Customers purchasing the PGS received raw genetic data generated by

14   sophisticated saliva testing of their DNA (the "DNA Data"), information and tools that enabled

15   them to trace their ancestry back 10,000 years, build a family tree, and locate relatives (the

16   "Ancestry Component"), and an overview of personal genetic traits and a variety of health

17   information (the "Health Component").[6]

18       Plaintiffs' claims in the Underlying PGS Litigation relate only to the Health Component

19   portion of the PGS.  It is alleged that 23andMe misrepresented in advertising that PGS would give

20   purchasers knowledge of their health conditions and their status as carriers of genetic disorders,

21   while the results actually provided were inaccurate, incomplete, and intended for use in a genetic

22   database by 23andMe that could be marketed to pharmaceutical companies.[7]  It is further alleged

23   that 23andMe did not apply for FDA approval of the PGS until 2012, but should have done so

24   

25   _____

[5] It is worth noting that the PGS was named Invention Of The Year by *Time* Magazine in 2008, and

26   has an A plus rating from the Better Business Bureau.  Fed. R. Evid. 201(b) [court may take judicial
     notice of facts "not subject to reasonable dispute in that" they are "capable of accurate and ready
     determination by resort to sources whose accuracy cannot reasonably be questioned"].

27   [6] *See* Cox Decl., Ex. 1 [Complaint], ¶¶ 6-8.

28   [7] *Id.* ¶¶ 18 - 24.

1    before marketing the PGS.  And that in accordance with an FDA "Warning Letter" dated

2    November 23, 2013, 23andMe was required to discontinue marketing the Health Component of the

3    PGS until marketing clearance and approval for the PGS was received from the FDA, and that

4    23andMe did so.[8]

5         Plaintiffs in the Underlying PGS Litigation contend that they would have paid less for the

6    PGS or would not have purchased the PGS at all if they had known the "true facts."[9]  23andMe

7    contends that the DNA Data and the Ancestry Component of the PGS were at least as valuable, by

8    themselves, as competitive products offering the same services but no health information

9    component.  23andMe further contends that Plaintiffs have misconstrued the purpose and effect of

10    the FDA's November 2013 correspondence, and have ignored numerous statements made by

11    23andMe in which it advised customers concerning the content and reliability of the PGS's Health

12    Component.  In sum, 23andMe has meritorious defenses that intends to assert vigorously in the

13    Underlying PGS Litigation.

14       **B.**      **Relevant Policy Provisions**

15         The Professional Liability provisions in Ironshore's policy No. 001306701 (the "Policy")

16    state in pertinent part:

> We will pay **Damages** that the **Insured** becomes legally obligated to pay because of
> a Claim alleging a **Wrongful Act** by the **Insured** or by a party for whose conduct
> the **Insured** may be legally responsible in rendering or failing to render **Professional
> Services** (including in the course of a **Human Clinical Trial**), provided that:
>
> 1. the **Wrongful Act** takes place on or after the Retroactive Date and prior to
>    the expiration date of the **Policy Period**;
>
> 2. the **Wrongful Act** takes place in the **Coverage Territory**; and
>
> 3. the **Claim** was first made against the **Insured** during the **Policy Period** or
>    any applicable Extended Reporting Period, and was reported to us as required
>    by SECTION V, Condition A.  A **Claim** will be deemed first made as set
>    forth in SECTION V, Condition B....[10]

24         The Policy defines a "**Claim**" as follows:

---

[8] *Id.* ¶¶ 11-12.

[9] *Id.* ¶ 25.

[10] Cox Decl., Ex. 1 [Complaint], Ex. A , § 1.13.

**Claim** means a written demand for **Damages**, services or other non-monetary relief. A **Claim** includes a **Suit**.[11]

And defines **Damages** as follows:

**Damages** means damages in excess of the applicable **Self-Insured Retention** and within the applicable Limit of Liability which are incurred by any **Insured**.

* * *

**Damages** do not include:

1. civil or criminal fines, sanctions, penalties or forfeitures;

2. the multiplied portion of multiplied damage awards;

3. non-monetary, injunctive, declaratory or equitable relief or amounts owing in order to effectuate such relief;

4. the return, refund or restitution of fees or other charges for **Your Product, Your Work** or your services;

5. amounts incurred to modify, redesign or correct **Your Product, Your Work** or your services, other than expenses covered under Insuring Agreement D.

6. amounts that are not insurable under any applicable law; or

7 plaintiff's attorney fees associated with any of the remedies listed in (1) through (6) above.

**Punitive or Exemplary Damages** covered by this Endorsement and paid by the Insured will serve to erode the Deductible or Self Insured Retention amounts referenced in Item 6 of the **Declarations**.[12]

The Policy also contains a number of exclusions that potentially bar or limit coverage for the Underlying PGS Litigation, including the Dishonest, Fraudulent, Criminal or Malicious Acts exclusion, which states in pertinent part:

This insurance does not apply to **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreements A or B. . . which are based upon, arising out of, directly or indirectly resulting from or in any way involving .

a. willful misconduct or willfully dishonest, fraudulent, criminal or malicious act, error or omission by any **Insured**; or

b. willful violation by any **Insured** of any law, statute, ordinance or regulation.

However, ... we will defend the **Insured** against such **Suit**, unless or until it has been determined that this exclusion applies. Determination of the applicability of this exclusion may be made by an admission or by a final adjudication in a proceeding

---

[11] *Id.* § VII.F.

[12] *Id.*, Endorsement 6.

constituting the **Claim** or in a proceeding separate **from** or collateral to any proceeding constituting the Claim....[13]

Similarly, The Misappropriation of Funds exclusion states:

This insurance does not apply to **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreements A or B . . . which are based upon, arising out of, directly or indirectly resulting from or in any way involving . . . the conversion, commingling, misappropriation or improper use of funds or other property, or the gaining of any personal profit or advantage to which the **Insured** is not legally entitled.[14]

## III.    ARGUMENT

### A.    Continued Prosecution Of Ironshore's Declaratory Relief Action Would Prejudice 23andMe's Defense Of The Underlying PGS Litigation

The Courts have recognized three conflicts in this context that create a "general rule barring declaratory relief of an insurer's coverage obligations."  *Haskel, Inc. v. Super. Ct.*, 33 Cal. App. 4th 963, 979 n.15 (1995).  Each of these conflicts is present in the case at bar.

**First**, an insurance carrier has a "special relationship" with its insured, requiring it to place its policyholder's interests on at least an equal footing with its own.  A carrier disregards this obligation and "effectively attacks its insured" when, as in the instant case, it pursues a coverage action while its insured is defending litigation commenced by hostile third-parties.  *Id*. at 979; *Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.)* 25 Cal.App.4th 902, 910 (*Montrose II*) ["The insurer must not be permitted to join forces with the plaintiffs in the underlying actions as a means to defeat coverage"].

**Second**, the carrier's offensive litigation requires the insured "to fight a two-front war."  Not only must 23and Me defend itself in the Underlying PGS Litigation against a host of different Plaintiffs, but it now has been sued by the carrier to which it paid substantial premium dollars for protection from just such defense cost and liability exposure.  *Montrose II, supra,* 25 Cal.App.4th at 910 ["Prejudice occurs when the insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and human resources

---

[13] *Id.*, § IV.A.14.

[14] *Id.*, §  IV.A.15.

to litigating coverage issues with its carriers"].  Indeed, in its coverage correspondence Ironshore committed to defend its insured based on *potential coverage for multiple claims* in the Underlying PGS Litigation[15] just days before filing a declaratory relief action claiming it has no duty to defend or indemnify 23andMe because "restitution, disgorgement, and other forms of relief that are not insurable" are also allegedly sought in the Underlying PGS Litigation.[16]

**Third**, and as emphasized by the Court in *Montrose II*, if the coverage action terminates prior to the underlying suits, then principles of collateral estoppel could bar 23andMe from asserting contrary positions in the underlying cases.  25 Cal.App.4th at 910 ["of course there is the collateral estoppel issue….[T]he insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage.  (Citations omitted)"].

All of these factors strongly support staying Ironshore's declaratory relief action at this time.  A federal district court has the inherent power to stay an action pending before it.  A court's stay authority is "incidental to the power inherent in every court to control the disposition of the causes on its docket ...."  *Landis v. North Am. Co.,* 299 U.S. 248 254 (1936).  Declaratory relief actions fall within the court's stay power.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S.491 (1942).  *Accord Commercial Cas. Ins. Co. of Georgia v. Kinann*, No. C02-5765 CRB, 2003WL 21321373 (N.D. Cal. June 4, 2003) [denying request for declaratory relief that insurance policy does not provide coverage while the underlying suit was pending in state court].

**B.     The Overlap Of Disputed Facts In The Coverage Action That Pertain To Both Liability And Damages In The Underlying PGS Litigation Mandates A Stay Of Ironshore's Declaratory Relief Case**

Most importantly, however, a significant overlap exists between insurance coverage issues, and both liability and damages issues in the Underlying PGS Litigation,which requires issuance of a stay as a matter of law.  *See e.g. Great American, supra,* 178 Cal.App.4th at 235; *United Enterprises*, *supra*, 183 Cal.App.4th at 1013; *accord Montrose I*, supra, 36 Cal.4th at 301.

---

[15] Cox. Decl., Ex. 1 [Complaint], Exs. E and F.

[16] Cox. Decl., Ex. 1 [Complaint], ¶ 1.

### 1. Overlapping liability issues

As the Court instructed in *David Kleis, Inc. v. Supp. Ct. (California Ins. Co.)*, 37 Cal.App.4th 1035, 1044 (1995):

> The "classic" situation in which a declaratory relief action should be stayed is where the third party seeks damages based on the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that the insured acted intentionally.

*Accord*, *Montrose I*, *supra*, 6 Cal.4th at 302 ["when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious."]  Here, whether 23andMe is ultimately adjudged to have acted negligently or intentionally is a disputed fact that must be adjudicated to establish *liability* for numerous claims asserted in the Underlying PGS Litigation.

For example, to prevail upon the underlying claims for false and misleading advertising in violation of Bus. & Prof. Code §§ 17500 *et seq.* ("FAL")[17] it will be necessary to establish that 23andMe acted with *scienter* because a defendant violates the FAL only if he knows that advertising is false or misleading or in the exercise of reasonable care should have known it to be untrue.  *People v. Forest E. Olson, Inc.*, 137 Cal.App.3d 137, 139-140 (1982).  As a result, while 23andMe will endeavor to show a lack of *scienter* with respect to the subject advertising in the Underlying PGS Litigation, Ironshore in its Declaratory Relief action could avoid coverage by establishing that its insured knew of the false or misleading nature of its PGS advertising.[18]

---

[17] *See* Cox Decl., Ex. 1 [Complaint], Ex. B [*Livingston v. 23andMe Inc.* Complaint], ¶¶ 80-86; Ex. C [*Davis-Hudson v. 23andMe Inc.* Complaint], ¶¶ 51-58; Cox Decl., Ex. 2 [*Tompkins v. 23 and Me Inc* Complaint.], ¶¶ 53-62; Cox Decl., Ex. 3 [*Casey v. 23andMe Inc* Complaint.], ¶¶ 60-73; Cox Decl., Ex. 4 [*Spreter v. 23andMe Inc.* Complaint], ¶¶ 54-63; Cox Decl., Ex. 5 [*Guthrie v. 23andMe Inc.* Complaint], ¶¶ 56-65; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶ 58-63; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 42-51; Cox Decl., Ex. 10 [*Stefani v. 23andMe Inc.* Complaint], ¶¶ 51-59; Cox Decl., Ex. 11 [*Aeron v. 23andMe Inc.* First Amended Complaint], ¶¶ 77-89.

[18] *See* Cox Decl., Ex. 1 [Complaint], ¶ 53 and Exhibit E to the Complaint, p. 22 (asserting Policy's exclusion for "a Claim that is based upon, arising out of, directly or indirectly resulting from or in any way involving… willful misconduct or willfully dishonest, fraudulent, criminal or malicious act[s]… by any Insured").

1    Similarly, while liability for violation of Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") can be

2  established in the Underlying PGS Litigation without a factual finding of *scienter* (*Kahn v. Medical*

3  *Bd.*, 12 Cal.App.4th 1834, 1845 (1993) [Section 17200 imposes liability without regard to the

4  defendant's mental state; no *scienter* is required to prove a UCL violation]), the potential for

5  overlapping prejudicial issues in both litigations still exists.  23andMe will undertake to demonstrate

6  that nothing in its advertising was false or misleading, or if that cannot be proven, that 23andMe did

7  not engage in the type of conduct that is to be "deterred" through the imposition of liability under the

8  UCL.  (*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 695 (2006) [restitution under

9  the FAL and UCL "serves two purposes -- returning to the plaintiff monies in which he or she has an

10  interest *and deterring the offender from future violations*" citing *People ex rel. Kennedy v. Beaumont*

11  *Investment, Ltd.*, 111 Cal.App.4th 102, 135 (2003) ["Statutory restitution is… [also] designed to

12  penalize a defendant for past unlawful conduct and thereby deter future violations"].)  Ironshore, on

13  the other hand, will attempt to defeat coverage in the Declaratory Relief action by establishing that

14  misconduct by 23andMe under the UCL was *willful misconduct* for which an appropriate UCL

15  remedy should be fashioned that deters its insured from committing future "violations."[19]

16    A comparable overlap and conflict exists relative to the CLRA claims asserted in the

17  Underlying PGS Litigation.[20]  Under California Civil Code § 1784, 23andMe possesses a potential

18  defense to any damage recovery if 23andMe:

19      "(a)    Proves that such [CLRA] violation was *not intentional*
        and resulted from a bona fide error notwithstanding the use of
20      reasonable procedures adopted to avoid any such error and

21      (b)    makes an appropriate correction, repair or replacement
        or other remedy of the goods and services according to the
22      provisions… of Section 1782."

23  _____

24  [19] *See* Cox Decl,, Ex. 1 [Complaint], ¶¶ 45, 53 and Exhibit E to the Complaint at p. 22 (disclaiming coverage for claims that "23andMe obtained and retained ill-gotten gains from the plaintiffs and

25  that the plaintiffs are entitled to recover those amounts").

26  [20] *See* Cox Decl., Ex. 2 [*Tompkins v. 23andMe Inc.* Complaint], ¶¶ 81-90; Cox Decl., Ex. 3 [*Casey v. 23andMe Inc.* Complaint], ¶¶ 74-85; Cox Decl. Ex. 4 [*Spreter v. 23andMe Inc.* Complaint], ¶¶

27  40-53;  Cox Decl., Ex. 5 [*Guthrie v. 23andMe Inc.* First Amended Complaint], ¶¶ 84-93; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶ 47-57; Cox Decl., Ex. 7 [*Dilger v. 23andMe Inc.*

28  Complaint], ¶¶ 64-77; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 78-88; Cox Decl., Ex. 10 [*Stefani v. 23andMe Inc.* Complaint], ¶¶ 78-87.

While it is in the insured's interests, therefore, to demonstrate a lack of intentional conduct under the CLRA, once again to defeat coverage Ironshore will be incentivized in this action to establish intentional misconduct to its insured's prejudice for purposes of the CLRA claims asserted in the Underlying PGS Litigation.

Finally, the Underlying PGS Litigation contains various deceit claims based both on intentional and on *negligent misrepresentation*.[21]  For the reasons discussed above, it is in 23andMe's interest to demonstrate that any misrepresentations in its PGS advertising were neither intentional, nor could have been prevented through exercise of reasonable care.  Ironshore will once again assert just the opposite in this Declaratory Relief action in order to defeat coverage for the deceit and negligent misrepresentation claims in the Underlying PGS Litigation.  Accordingly, the overlap of factual issues going to *liability* in the Underlying PGS Litigation is sufficient in and of itself to mandate a stay of Ironshore's Declaratory Relief action.

## 2.     Overlapping damages issues

Ironshore's Declaratory Relief action is based upon the false premise that there can be no *damage* recoveries in the Underlying PGS Litigation if the recovery is *calculated* by taking into account the amount paid to 23andMe for the PGS as such an award must necessarily constitute *uninsurable restitution* rather than *covered damages*.[22]  Ironshore is wrong.

In fact, if successfully asserted, numerous claims in the Underlying PGS Litigation will require Ironshore to pay **benefit of the bargain damages** under California law.  Recovery under the CLRA illustrates this point.  As the Court held in *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1078 (E.D.Cal. 2010):

---

[21] *See* Cox Decl., Ex. 1 [Complaint], Ex. B [*Livingston v. 23andMe Inc.* Complaint], ¶¶ 100-111; Cox Decl., Ex. 2 [*Tompkins v. 23andMe Inc.* Complaint], ¶¶ 91-111; Cox Decl., Ex. 3 [*Casey v. 23andMe Inc.* Complaint], ¶¶ 98-109; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶ 69-82; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 52-77; Cox Decl., Ex. 10 [*Stefani v. 23andMe Inc.* Complaint], ¶¶ 88-108; Cox Decl., Ex. 11 [*Aeron v. 23andMe Inc.* First Amended Complaint], ¶¶ 103-114.

[22] *See* Cox Decl., Ex. 1 [Complaint], ¶¶ 64 ["Ironshore is entitled to a judicial declaration that the underlying actions do not seek, in whole or in part, relief that meets the Policy definition of Damages"]; 65 ["Ironshore is entitled to a judicial declaration that the underlying actions do not seek, in whole or in part, relief that is insurable under applicable law"].

1

> A plaintiff may sufficiently allege [CLRA] injury where she contends that she did not receive the *benefit of the bargain* because a purchased product cost more than similar products without misleading labeling….  As such, plaintiffs have alleged that they did not receive the *benefit of the bargain* because they assert that the product they received was worth less than what they paid for it.

Plaintiffs in the Underlying PGS Litigation have similarly asserted CLRA claims for which *actual* damages based on having been denied the benefit of all 3 components of the PGS could be awarded under the CLRA.[23]  *Accord Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) ["The CLRA's 'any damage' requirement is a capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices."].  As a consequence, any recovery of CLRA actual damages in the Underlying PGS Litigation could be covered Damages under the terms of the Policy.

Likewise, a benefit of the bargain damage recovery is available to Plaintiffs in the Underlying PGS Litigation who can prove intentional or negligent misrepresentation deceit claims. *Fragale v. Faulkner*, 110 Cal.App.4th 229, 236 (2003):

> There are two measures of damages for fraud:  out-of-pocket and benefit-of-the-bargain.  …  The benefit-of-the-bargain measure places a defrauded plaintiff in the position he would have enjoyed had the false representation been true, awarding him the difference in value between what he actually received and what he was fraudulently led to believe he would receive. (Citations omitted.)

Therefore,  any recovery of deceit actual damages in the Underlying PGS Litigation could be covered Damages under the Policy as many underlying complaints contain a negligent misrepresentation claim seeking such actual damages.[24]  Ironshore should not be permitted to

---

[23] *See e.g.* Cox Decl., Ex. 2 [*Tomkins v. 23andMe, Inc.* Complaint], ¶¶ 81-90; Cox Decl., Ex. 3 [*Casey v. 23andMe, Inc.* Complaint], ¶¶ 74-85 and Prayer, ¶ 5; Cox Decl. Ex. 4 [*Spreter v. 23andMe Inc.* Complaint], ¶¶ 40-53 and Prayer, ¶ 3;  Cox Decl., Ex. 5 [*Guthrie v. 23andMe Inc.* First Amended Complaint], ¶¶ 84-93 and Prayer, ¶ 3; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶ 47-57 and Prayer, ¶ 3; Cox Decl., Ex. 7 [*Dilger v. 23andMe Inc.* Complaint], ¶¶64-77 and Prayer, ¶ E; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 78-88 and Prayer, ¶ D; Cox Decl., Ex. 10 [*Stefani v. 23andMe Inc.* Complaint], ¶¶ 78-87 and Prayer, ¶ 3.

[24] *See e.g.* Cox Decl., Ex. 1 [Complaint], Ex. B [*Livingston v. 23andMe, Inc.* AAA Complaint], ¶¶ 106-111; Cox Decl., Ex. 2 [*Tomkins v. 23andMe, Inc.* Complaint], ¶¶ 105-111; Cox Decl., Ex. 3 [*Casey v. 23andMe, Inc.* Complaint], ¶¶ 102-109; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶ 76-82 and Prayer, ¶ 3; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 52-

Footnote continued on next page

litigate in this action the nature of damages that might be awarded if covered deceit claims in the Underlying PGS Litigation are established.

A benefit of the bargain damage recovery is also available for breach of warranty of merchantability claims. *See Guido v. L'Oreal, USA, Inc.*, 213 WL 3353857, *14 (C.D.Cal. 2013) [holding "damages a plaintiff can recover for a breach of the warranty of merchantability are 'the monetary equivalent of the benefit of his bargain." (Citation omitted.)]. The general measure of damages for breach of warranty is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Cal. Com. Code § 2714. In such an action, the purchase price is *not* the proper measure of damages where the buyer has not rescinded and the seller has not abandoned. *Starr Piano Co. v. Martin*, 119 Cal. App. 642, 650 (1932). And again virtually every Complaint in the Underlying PGS Litigation contains breach of express or implied warranty claims.[25] Therefore, no basis exists for permitting Ironshore to attempt to adjudicate in this action the nature of damages that might be awarded if covered breach of warranty claims in the Underlying PGS Litigation are established.

Furthermore, although both the UCL and FAL authorize a court to grant "restitution," this does not mean that any monetary award under those claims in the Underlying PGS Litigation is limited to a refund or return of the purchase price, rather than *damages* that are calculated based in part upon the amount the PGS purchase price. "Restitution can be determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair or fraudulent business practice." *Brazil v. Dole Packaged Foods, LLC*, 12-CV-01831, 2014 WL 2466559 at *15 (N.D.Cal. 2014) Here, the PGS purchased by

---

Footnote continued from previous page

57 and Prayer, ¶ D; Cox Decl., Ex. 10 [*Stefani v. 23andMe Inc.* Complaint], ¶¶ 102-108 and Prayer, ¶ 3; Cox Decl., Ex. 11 [*Aeron v. 23andMe Inc.* First Amended Complaint], ¶¶ 107-114.

[25]  *See e.g.* Cox Decl., Ex. 1 [Complaint], Ex. B [*Livingston v. 23andMe Inc.* Complaint], ¶¶ 91-99; Cox Decl., Ex. 2 [*Tompkins v. 23andMe Inc.* Complaint], ¶¶ 91-111; Cox Decl., Ex. 3 [*Casey v. 23andMe Inc.* Complaint], ¶¶ 98-109; Cox Decl., Ex. 1 [Complaint], Exhibit C to the Complaint [*Davis-Hudson v. 23andMe Inc.* Complaint], ¶¶ 59-62;; Cox Decl., Ex. 2 [*Tomkins v. 23andMe, Inc.* Complaint], ¶¶ 98-104; Cox Decl., Ex. 3 [*Casey v. 23andMe, Inc.* Complaint], ¶¶ 86-90; Cox Decl., Ex. 6 [*Martin v. 23andMe Inc.* Complaint], ¶¶ 87-93; Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 63-69; Cox Decl., Ex. 9 [*Newland v. 23andMe Inc.* Complaint], ¶¶ 27-51; Cox Decl., Ex. 11 [*Aeron v. 23andMe Inc.* First Amended Complaint], ¶¶ 90-94.

Plaintiffs contained the DNA Data and the Ancestry Component, as well as the Health Component. Thus, any damages that might be awarded under the UCL and FAL must *at a minimum* reflect the actual market value of the DNA Data and Ancestry Component, even if the Health Component is assumed to add little value to the PGS.  Ignoring these component values through a refund of the PGS purchase price, assuming arguendo that UCL and FAL liability can be established, would incorrectly do more than "make injured consumers whole."  *See Colgan, supra,* 135 Cal. App. 4th at 696-97 (2006).

In other words, the proper measure of damages for a UCL or FAL claim must take into account "the dollar value of the consumer impact or the advantage realized by" the product compared to similar products on the market.  *Colgan, supra,* 135 Cal. App. 4th at 700 (rejecting restitutionary award in UCL action for products "Made in the USA" where expert "did not attempt to quantify either the dollar value of the consumer impact or the advantage realized by [the product].").  23andMe contends the evidence will show that the DNA Data and the Ancestry Component of the PGS were at least as valuable, by themselves, as comparable services offered by competitors.  Consequently, while the Plaintiffs in the Underlying PGS Litigation may seek a refund of their PGS purchase price, in addition to other monetary relief[26], a purchase price refund will likely *not* be the monetary recovery that is awarded should they prevail on UCL and/or FAL claims at trial.

Ironshore apparently intends to prove in this action that all forms of recovery based on the PGS's purchase price is a form of restitution, and that restitution is somehow mutually exclusive from covered "damages" so its duty to defend does not exist in any of the underlying cases in which restitution is prayed for.  (Complaint, ¶¶1 and 64-65.)  This is incorrect as a matter of law.

---

[26]  *See, e.g.*, Cox Decl., Ex. 2 [*Tompkins v. 23andMe Inc.* Complaint], ¶¶ 68 and 79-80 (for UCL claims, plaintiff seeks not only "restitution of the money wrongfully acquired by Defendant" but also "actual damages"); Cox Decl., Ex. 7 [*Dilger v. 23andMe Inc.* Complaint], ¶ 84 (for UCL claim, plaintiff seeks "injunctive relief, restitution, disgorgement of ill-gotten gains, attorneys' fees, and *all other remedies and relief that may be permitted by law and equity*"); Cox Decl., Ex. 8 [*Stanton v. 23andMe Inc.* Complaint], ¶¶ 97, 106 (for UCL claims, plaintiffs claim to have suffered "actual damages as described herein and are entitled to recover such damages, together with punitive, equitable relief, injunctive relief, and reasonable attorneys' fees"); Cox Decl., Ex. 9 [*Newland v. 23andMe Inc.* Complaint], ¶ 79 (for UCL claim, plaintiff seeks "injunctive relief;…restitution;…[and] *[s]uch other or further relief as is appropriate*").

1    In fact, the California Supreme Court has held that reimbursement and other compensation

2    for out-of-pocket loss are "damages" for the purposes of insurance coverage, even if such relief is

3    "restitutive."  *See Unified Western Grocers v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115 (2006)

4    [in coverage dispute under California law, "the label of 'restitution' or 'damages' does not dictate

5    whether a loss is insurable."); *Bank of the West v. Superior Court (Industrial Indem. Co.)*, 2 Cal. 4th

6    1254, 1270 (1992) ("[I]nsurable 'damages' include monetary awards that represent compensation

7    for harm to third parties, even if such awards bear the label 'restitution.'").  A court may very well

8    calculate a damages award amount that takes into account the full purchase price--a "restitutive"

9    method of calculating damages -- and still award insurable monetary damages.  Ultimately, "it is the

10   *nature* of the relief sought that controls coverage, rather than the *measure* of the type of relief at

11   issue." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 834 (1990).

12   In *AIU Ins.*, the insurer argued it was not obligated to provide coverage for cleanup and

13   other costs incurred pursuant to a suit under the Comprehensive Environmental Response and

14   Compensation and Liability Act (CERCLA).  *Id*.  The policy included coverage for "damages," but

15   the insurers contended that damages were not available under CERCLA because it provided either

16   for the reimbursement or "restitution" of cleanup costs to government agencies, or for an injunction

17   requiring that the defendant remove the contaminants.  The California Supreme Court held that such

18   remedies were "damages" under the policy, noting that in requesting reimbursement for response

19   costs, the underlying plaintiffs were effectively requesting monetary "compensation" for their loss.

20   *Id.* at 828.  The Court continued that while reimbursement *can* be considered a restitutive remedy,

21   "[t]his label does not, however, preclude characterization of the amounts in question as 'damages'

22   awarded to compensate a plaintiff."  *Id*. at 835-36. Instead, "restitution, to which the insurers

23   analogize the reimbursement at issue here, is frequently denominated as one type of 'damages' for

24   descriptive purposes." *Id*.  The Court concluded, "Whatever technical distinctions we and other

25   courts have drawn between restitution and compensatory damages in other contexts, in ordinary

26   terms both concepts are within the definition of 'damages.' For the purposes of interpretation, this

27   fact is dispositive." *Id.* at 836.

28

1       Accordingly, the damage vs. restitution  issues to be determined in the Underlying PGS

2   Litigation are also in conflict and overlap with the claims asserted by Ironshore in its Declaratory

3   Relief action.  For all of these reasons, the stay sought by 23andMe in this matter *must* be granted.

4       **C.**     **Ironshore Will Not Be Prejudiced By A Stay**

5       Although Ironshore now seeks to avoid its obligations under the Policy, California law

6   dictates that, at a minimum, Ironshore has a continuing duty to defend its insured as Ironshore's

7   own recent coverage correspondence concluded.[27]  California law on the duty to defend is well-

8   established, unambiguous, and deliberately protective of the insured.  If any of the facts alleged in

9   the Underlying PGS Litigation raise even the mere potential for covered damages, the insurer must

10   defend the entire case.  *See Buss v. Super. Ct*., 16 Cal. 4th 35, 48-49 (1997).  "Any doubt as to

11   whether the facts give rise to a duty to defend is resolved in the insured's favor."  *Horace Mann Ins.*

12   *Co., v. Barbara B*., 4 Cal. 4th 1076, 1081 (1998); *see also Montrose I*, 6 Cal. 4th at 299.

13       Moreover, Ironshore's duty to defend does not depend on proof of Plaintiffs' claims or proof

14   of covered damages in the Underlying PGS Litigation, but rather on whether *potentially covered*

15   claims have been alleged in that litigation.  *Horace Mann*, 4 Cal. 4th at 1081 [holding that the

16   determination whether a duty to defend exists is made in the first instance by comparing the

17   allegations of the complaint with the terms of the policy].

18       Plaintiffs' allegations in the Underlying PGS Litigation clearly fall within the terms of the

19   Policy.  23andMe does not bear the burden of proving Plaintiffs' allegations to its own insurance

20   carrier.  To the contrary, 23andMe is entitled to dispute Plaintiffs' allegations in the Underlying PGS

21   Litigation and vigorously to defend itself with the support of its insurance carrier.  Should Plaintiffs

22   ultimately prove *only* uninsurable claims at trial, or if in the future *no* insurable claims or recoveries

23   remain in the Underlying PGS Litigation, then Ironshore may proceed with its Declaratory Relief

24   action.  *See Great American, supra,* 178 Cal.App.4th at 225 [when there is no longer a potential for

25   coverage, carrier may bring a declaratory relief action to obtain a judicial determination that it need

26   no longer provide a defense].

27

28   [27] Cox Decl. Ex. 1 [Complaint], Exs. E and F.

1    Accordingly, no material prejudice to Ironshore could result from staying this action

2  pending resolution of the Underlying PGS Litigation through trial or settlement.

3  **IV.    CONCLUSION**

4    23andMe has demonstrated that it will suffer severe prejudice if this coverage action is

5  allowed to proceed, and Ironshore cannot show material prejudice from a stay of this proceeding.

6  As a result, 23andMe requests that the Court grant its motion to stay the instant case pending final

7  adjudication or settlement of the Underlying PGS Litigation.

8  Dated:  September 4, 2014                                    ARNOLD & PORTER LLP

9

10                                                                 By:  /S/ _____
                                                                         Lawrence A. Cox
11                                                                 Attorneys for Defendant
                                                                   23ANDME, INC.

12  34859414

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28