UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>23ANDME, INC.,<br><br>        Defendant. | Case No. 14-cv-03286-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 50] |

This declaratory relief action arises out of an insurance coverage dispute between Plaintiff Ironshore Specialty Insurance Company ("Ironshore") and its insured, Defendant 23andMe, Inc. ("23andMe"). Ironshore seeks a declaration that a professional liability policy issued to 23andMe does not give rise to a duty to defend or indemnify 23andMe with respect to certain lawsuits, arbitrations, and other legal proceedings. Currently before the Court is Ironshore's motion for summary judgment, which is granted in part and denied in part for the reasons discussed below.

**I.   BACKGROUND[1]**

23andMe provides a "personal genome service" to consumers who wish to access and understand their personal genetic information. A consumer may buy a DNA saliva collection kit and then send a saliva sample back to 23andMe for testing. 23andMe posts the results to the consumer's personal account on a 23andMe website. During the relevant time frame, the results consisted of the raw genetic data obtained by saliva testing ("DNA Data"), information regarding ancestry ("Ancestry Component"), and information regarding personal genetic traits and personal

---

[1] The facts contained in the Background section are undisputed by the parties.

health ("Health Component").

On November 22, 2013, the United States Food and Drug Administration ("FDA") sent 23andMe a warning letter stating that "you are marketing the 23andMe Saliva Collection Kit and Personal Genome Service ('PGS') without marketing clearance or approval in violation of the Federal Food, Drug and Cosmetic Act." Warning Letter, Exh. 5 to Schiller Decl. ECF 50-9.[2] The FDA was particularly concerned about information provided by 23andMe regarding consumers' risks for certain medical conditions and assessments of drug responses. *Id.* 23andMe thereafter stopped offering the Health Component to new consumers.

Several legal proceedings were commenced against 23andMe, including class actions in federal district courts, class arbitration complaints before the American Arbitration Association ("AAA"), and a Civil Investigative Demand ("CID") issued by the State of Washington. Those actions alleged among other things that: 23andMe falsely represented in advertising that the personal genome service would give consumers knowledge about their health conditions and their status as carriers of genetic disorders; the results actually provided were inaccurate and incomplete; 23andMe misled consumers into believing that the personal genome service had received government approval; and 23andMe did not disclose to consumers that their genetic information would be used to create a database that 23andMe could market to physicians and pharmaceutical companies. Claims asserted in those proceedings included false advertising under California Business & Professions Code § 17500, unfair competition in violation of California Business & Professions Code § 17200, violation of California's Consumer Legal Remedies Act, deceit, breach of warranty, negligent misrepresentation, and unjust enrichment.

23andMe tendered the defense of the actions to Ironshore under a policy that Ironshore issued to 23andMe for the period March 19, 2013 to March 19, 2014. Ironshore accepted the defense of the actions under a reservation of rights and filed the present lawsuit seeking a declaration that it has no duty to defend or indemnify 23andMe in the underlying actions.

---

[2] Ironshore requests that the Court take judicial notice of the warning letter and legal proceedings commenced after its issuance (discussed below) as matters of public record. Those requests are GRANTED. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

1  23andMe moved to stay the declaratory relief lawsuit pending resolution of the underlying actions.
2  This Court granted the stay motion in in part, but ordered that Ironshore could proceed in litigating
3  two coverage defenses: (1) a policy exclusion for contractual liability and (2) an assertion that the
4  CID does not qualify as a covered claim. *See* Order Granting in Part and Denying in Part Motion
5  for Stay, ECF 48. Ironshore now seeks summary judgment based on those two defenses.

## II.  LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id.* "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  DISCUSSION

The policy contains two "insuring agreements," referred to as "Insuring Agreement A" and "Insuring Agreement B." Policy § I, Exh. 1 to Bromfield Decl., ECF 50-2. Only Insuring Agreement B, titled "Professional Liability Insurance," is at issue here. That agreement provides professional liability insurance as follows:

3

> We will pay **Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** alleging a **Wrongful Act** by the **Insured** or by a party for whose conduct the **Insured** may be legally responsible in rendering or failing to render **Professional Services** (including in the course of a **Human Clinical Trial**).

Policy § I.B., Exh. 1 to Bromfield Decl., ECF 50-2 (bold in original).[3]

Ironshore contends that this provision does not obligate it to defend or indemnify 23andMe in the underlying federal class actions and class arbitrations (collectively, "underlying class actions") because all of the claims asserted in those actions fall within a policy exclusion for contractual liability. Ironshore also contends that it is not obligated to defend or indemnify 23andMe with respect to the CID issued by the State of Washington because the CID does not qualify as a covered "claim" under the policy.

### A.     Law Governing Policy Interpretation

Because California is the forum state in this diversity action, its substantive law governs interpretation of the insurance policy. *See Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014) ("California's substantive insurance law governs in this diversity case.") (internal quotation marks and citation omitted); *Bell Lavalin, Inc. v. Simcoe & Erie Gen. Ins. Co.*, 61 F.3d 742, 745 (9th Cir. 1995) (applying forum state's law to policy interpretation in diversity action). Under California law, "'[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation.'" *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (quoting *Waller v. Truck Ins. Exch., Inc.* 11 Cal.4th 1, 18 (1995)).

The California Supreme Court instructs that the following principles "govern the construction of insurance policy language in this state": "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *MacKinnon*, 31 Cal. 4th at 647 (internal quotation marks and citations omitted). Judicial interpretation is controlled by the "clear and explicit meaning" of the contract provisions, which are "interpreted in their ordinary and popular sense" unless given a special meaning by the parties. *Id.* at 647-48. Policies are interpreted broadly to afford the greatest possible protection to

---

[3] The policy contains some additional requirements, not at issue here, regarding timing and geography of the Wrongful Act and timing of the claim against the insured.

4

the insured, while "exclusionary clauses are interpreted narrowly against the insurer." *Id.* at 648 (internal quotation marks and citations omitted). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *Id.*

If an insured tenders a claim to the insurer that creates a potential for coverage, the insurer must provide the insured with a defense. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (citing *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993)). "The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Id.* at 655 (citing *Montrose,* 6 Cal. 4th at 295). "From these premises, the following may be stated: If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." *Id.* "On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." *Id.*

In applying these principles, this Court is bound by the decisions of the California Supreme Court. *See Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* (internal quotation marks and citations omitted).

### B. Contractual Liability Exclusion

Ironshore contends that all of the claims asserted in the underlying class actions fall within a policy exclusion for contractual liability. The exclusion reads as follows:

> This insurance does not apply to **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreements A or B . . . based upon, arising out of, directly or indirectly resulting from or in any way involving:
>
> **1.     Contractual Liability**
>
> Your assumption of liability or obligations in a contract or agreement. This exclusion does not apply to liability or obligations:

      a.    that you would have in the absence of the contract or agreement; or

      b.    that you assumed in an **Insured Contract**, provided the **Bodily Injury**, **Property Damage** or **Wrongful Act** occurs subsequent to your execution of the **Insured Contract**. However, this exception for liability you assumed in an **Insured Contract** only applies to the extent of any limits or coverage required by the **Insured Contract**. Solely for purposes of the coverage provided by this subparagraph (b), we will treat as **Damages** any attorneys fees or litigation expenses for which you are liable under such **Insured Contract**.

Policy § IV.A.1, Exh. 1 to Bromfield Decl.., ECF 50-2 (bold in original).

Ironshore argues that this language excludes coverage for *all* claims, whether based on breach of contract or other legal theories, which arise out of or involve *any* contract entered into by 23andMe. According to Ironshore, all of the claims in the underlying class actions are grounded in allegations that the plaintiffs bought personal genome services from 23andMe but would have paid less for the services or would not have bought the services at all had they known that the services did not provide accurate health information. Because all of the underlying claims depend upon purchase of the personal genome service (a "contract or agreement"), Ironshore argues, all of the underlying claims are excluded from coverage under the Contractual Liability Exclusion. In opposition, 23andMe contends that the exclusion has no application to liabilities or obligations arising from 23andMe's *own* contracts but applies only to liabilities and obligations that were originally those of a third party and subsequently were *assumed* by 23andMe.

Relying on the California Court of Appeal's decision in *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006), Ironshore submits that under California law the exclusion must be broadly construed. Pl.'s Mot. at 5-6, ECF 50. This Court agrees with Ironshore that California courts would construe the phrase "arising out of" broadly so as to encompass all claims asserted in the underlying class actions, whether based on breach of contract or other legal theories. *See Medill*, 143 Cal. App. 4th at 830 ("California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions.") (internal quotation marks and citation omitted). However, *Medill* does not speak to whether the exclusion of claims arising from 23andMe's contractual "assumption of liability or obligations" refers to liability or obligations undertaken by 23andMe in *any* contract, including its own (Ironshore's

6

position), or liability or obligations originally undertaken by a third party and subsequently *assumed* by 23andMe (23andMe's position). The policy in *Medill* expressly excluded from the definition of "loss" damages "arising out of breach of *any* contract, whether oral, written, or implied, except employment contracts with individuals." *Medill*, 143 Cal. App. 4th at 826 (italics added). The Contractual Liability Exclusion at issue here does not expressly exclude coverage for claims arising from breach of "any" contract.

Despite thorough research, neither the Court nor the parties have discovered any California Supreme Court cases, or even appellate court cases, addressing the precise exclusionary language at issue here. Accordingly, this Court must endeavor to predict how the California Supreme Court would interpret the Contractual Liability Exclusion. *See Strother*, 79 F.3d at 865. As discussed above, under California law exclusionary clauses are interpreted narrowly against the insurer and the insurer has the burden of establishing that a claim falls within a policy exclusion. *See MacKinnon*, 31 Cal. 4th at 648.

Ironshore relies on *APL Co. PTE. Ltd. v. Valley Forge Ins. Co.*, 541 Fed. Appx. 770 (9th Cir. 2013) and *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, No. BC268832 slip. op. (Cal. Super. Ct. Oct. 7, 2004) in support of its proposed construction of the phrase "assumption of liability or obligations in a contract or agreement." *APL*, an unpublished Ninth Circuit decision, assumed without discussion or analysis that the contractual liability exclusion applied to the insured's own contracts. Consequently, *APL* provides no guidance as to how the California Supreme Court would interpret the exclusion. *Golden Eagle* is an unpublished California Superior Court decision that may not be cited or relied upon here under California Rules of Court. *See* Cal. Rule of Ct. 8.1115.

Ironshore also relies on the language of the exclusion itself, arguing that "a layman necessarily would understand the phrase 'obligation in a contract or agreement' to encompass the promise that 23andMe allegedly made to provide its customers with accurate health data." Pl.'s Mot. at 9, ECF 50. Ironshore is correct that the policy should be interpreted "as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.,* 32 Cal.4th 465, 471 (2004) (internal quotation marks and citation omitted).

7

1   However, Ironshore's recitation of the policy language omits the key word "assumption."
2   23andMe cites to standard collegiate dictionary definitions suggesting that "assumption" means an
3   *expansion* of one's obligations. For example, the *Merriam-Webster* dictionary defines
4   "assumption" as "a taking to or upon oneself <the *assumption* of a new position>"; "the act of
5   laying claim or taking possession of something <the *assumption* of power>"; and "the taking over
6   of another's debts." *Merriam-Webster's Collegiate Dictionary* (10th ed.).[4] A layman reasonably
7   could be expected to rely on standard collegiate dictionaries such as *Merriam-Webster*. Given the
8   definitions set forth above, the Court is not persuaded that a layman would understand the
9   Contractual Liability Exclusion to preclude claims involving *any* contract entered into by
10  23andMe. A layman would be just as likely, if not more likely, to understand the exclusion to
11  preclude only those claims involving contracts under which 23andMe *assumed* third parties'
12  liabilities or obligations.
13      Ironshore asserts that "[n]umerous courts" have held that similar policy language
14  encompasses obligations undertaken by *any* contract, not just those contracts assuming the
15  liabilities and obligations of third parties. *See, e.g., Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*,
16  562 F.3d 591, 599 (3d Cir. 2009); *O&G Indus., Inc. v. Litchfield Ins. Grp., Inc.*, No. 126006448S,
17  2015 WL 3651786, at *10 (Conn. Super. Ct. May 15, 2015); *CIM Ins. Corp. v. Midpac Auto Crt.,*
18  *Inc.*, 108 F. Supp. 2d 1092, 1099 (D. Haw. 2000); *Monticello Ins. Co. v. Dismas Charities, Inc.*,
19  No. 96-550, 1998 WL 1969611, at *2 (W.D. Ky. Apr. 3, 1998). 23andMe counters with citations
20  to decisions from other courts limiting similar policy exclusions to contracts that assume the
21  liabilities and obligations of third parties. *See, e.g., Indiana Ins. Co. v. Kopetsky*, 11 N.E. 3d 508,
22  524 (Ind. Ct. App. 2014); *Travelers Prop. Cas. Co. of Am. v. Peaker Servs., Inc.*, 306 Mich. App.
23  178, 189-99 (Ct. App. 2010).[5]

---

[4] Although *Black's Law Dictionary* is of limited relevance given California's emphasis on interpreting policies from a layman's perspective, the Court notes that *Black's* similarly defines "assumption" as "[t]he act of taking (esp. someone else's debt or other obligation) for or on oneself; the agreement to so take <**assumption** of a debt>." *Black's Law Dictionary* (10th ed. 2014).

[5] 23andMe also cites cases decided under Texas law, which does *not* limit similar exclusionary language to contracts in which the insured has assumed the liabilities or obligations of a third

This Court finds it more likely that the California Supreme Court would adopt the approach reflected in the cases cited by 23andMe. As an initial matter, those cases represent the majority view. *See Kopetsky*, 11 N.E. 3d at 524 (characterizing the view that contractual liability exclusions are limited to contracts assuming the liability of a third party as "the majority position by a wide margin"). *Kopetsky* relied heavily upon a decision of the Alaska Supreme Court explaining that "'[l]iability assumed by the insured under any contract refers to liability incurred when one promises to indemnify or hold harmless another, and does not refer to the liability that results from breach of contract.'" *Id.* (quoting *Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska,* 648 P.2d 1008, 1011 (Alaska 1982)). "'[There is an] important distinction between *incurring* liability through breach of contract and specifically contracting to *assume* liability for another's negligence." *Id.* (quoting *Olympic, Inc.*, 648 P.2d at 1011)). These cases are most consistent with the California courts' view that exclusionary clauses must be interpreted narrowly against the insurer. *See MacKinnon*, 31 Cal. 4th at 648.

The Court finds particularly persuasive the *Peaker* decision of the Michigan Court of Appeals. Like California, Michigan applies a "plain meaning" approach to policy interpretation, construes exclusionary clauses strictly in favor of the insured, and places upon the insurer the burden of proving that a claim falls within an exclusion. *See Peaker*, 306 Mich. App. at 185, 192. In *Peaker*, the court surveyed decisions of other jurisdictions, examined legal treatises, and ultimately concluded that the phrase "assumption of liability" in the context of a contractual liability exclusion "refers to those contracts or agreements wherein the insured assumes the liability of another." *Id.* at 191-92. The court held that "[t]o conclude otherwise and construe 'assumption' to encompass an insured's own liability for breach of contract renders the phrase 'assumption of liability' surplusage." *Id.* at 192.[6]

---

party. *See, e.g., Crownover v. Mid-Continent Cas. Co.* 772 F.3d 197, 203 (5th Cir. 2014); *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010). 23andMe argues that the Texas cases nonetheless support its position because they apply the exclusion only when the insured takes on a liability or obligation that extends beyond the insured's ordinary contractual duties. The Court agrees that the Texas decisions provide some support for 23andMe's position that the exclusion does not apply to *all* contracts entered into by the insured.

[6] *Peaker*, like most of the cases cited by both parties, addressed a commercial general liability

Ironshore argues that the interpretation urged by 23andMe would be inconsistent with California law rejecting efforts to characterize breaches of contractual obligations as "occurrences," citing several cases holding that "[i]nsurance policies are not designed to operate as 'performance bonds,' guaranteeing the performance of the insured's contractual obligations." Pl.'s Mot. at 8 (citing cases). While breach of contract has been asserted in at least one of the underlying actions, the vast majority of the underlying claims are for false advertising, unfair competition, fraud, and the like. Thus the concern that Ironshore will become the guarantor of 23andMe's contractual obligations does not appear particularly compelling here.

Additionally, Ironshore argues that 23andMe's construction of the phrase "Your assumption of liability or obligations in a contract or agreement" would render surplusage the words "or obligations." *See* Pl.'s Suppl. Br. at 5, ECF 63. The Court agrees with Ironshore that 23andMe's explanation – that the words "liability and obligations" are redundant like "belts and suspenders" – is inconsistent with California's "fundamental principle that policy language be so construed as to give effect to every term." *Mirpad, LLC v. Cal. Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1072 (2005). However, a plain reading of the exclusion makes clear that the policy excludes both assumption of liability and assumption of obligations. Otherwise, Ironshore's construction would render surplus the phrase "assumption of liability." *See Peaker*, 306 Mich. App. at 192. The Court's construction preserves the distinctness between the terms "liability" and "obligation" and avoids rendering surplus the phrase "assumption of liability."

Having considered carefully the parties' arguments and the relevant legal authorities, this Court concludes that the California Supreme Court likely would follow the majority view propounded by 23andMe in interpreting the Contractual Liability Exclusion and, in particular, would be persuaded by *Peaker*, a decision from a jurisdiction with a similar approach to

---

("CGL") policy. At the hearing, Ironshore's counsel emphasized that the policy at issue in this case is a professional liability policy rather than a CGL policy. 23andMe's counsel argued that the distinction between CGL policies and professional liability policies is irrelevant to the proper construction of the Contractual Liability Exclusion. Ironshore has not explained why the distinction is important to the Court's analysis, and Ironshore itself relies on cases addressing CGL policies. Accordingly, the Court has relied upon cases interpreting CGL policies in construing the exclusion at issue here.

1  interpretation of insurance policies.  Adoption of the majority view would be consistent with
2  California cases holding that "[t]he courts will not sanction a construction of the insurer's
3  language that will defeat the very purpose or object of the insurance." *Gray v. Zurich Ins. Co.*, 65
4  Cal. 2d 263, 278 (1966).  The professional liability policy obtained by 23andMe covers "**Damages**
5  that the **Insured** becomes legally obligated to pay because of a **Claim** alleging a **Wrongful Act** . .
6  . in rendering or failing to render **Professional Services**."  Policy § I.B., Exh. 1 to Bromfield
7  Decl., ECF 50-2 (bold in original).  23andMe renders its professional services by selling
8  consumers a DNA saliva collection kit and related personal genome services.  According to
9  Ironshore, all claims related to that sales transaction fall within the Contractual Liability
10 Exclusion.  Thus if the Court were to adopt Ironshore's construction of the Contractual Liability
11 Exclusion, virtually *all* claims relating to 23andMe's professional services would be excluded
12 from coverage.  At the hearing, Ironshore's counsel states that some claims would survive, for
13 example, HIPPA[7] claims and claims arising out of violations of FDA statutes.  As far as the Court
14 is aware, no such claims have been asserted against 23andMe.  According to Ironshore, *all* of the
15 claims asserted against 23andMe in multiple proceedings instituted in federal district court and
16 before AAA relate to the very sales transaction that Ironshore contends triggers application of the
17 Contractual Liability Exclusion.  Thus Ironshore's construction of the exclusion would appear to
18 defeat the professional liability coverage for which 23andMe bargained.
19      Because it has failed to meet its burden of establishing that all of the claims asserted in the
20 underlying class actions are excluded from coverage under the Contractual Liability Exclusion,
21 Ironshore's motion for summary judgment based upon the Contractual Liability Exclusion is
22 DENIED.[8]

---

[7] Health Insurance Portability and Accountability Act.

[8] Given the Court's denial of Ironshore's motion for summary judgment based upon the Contractual Liability Exclusion for the reasons discussed above, the Court need not reach 23andMe's additional argument that the Contractual Liability Exclusion is ambiguous.  The Court likewise need not address 23andMe's request, set forth in its supplemental brief, for summary judgment in its favor on the Contractual Liability Exclusion, as 23andMe has not filed a motion for summary judgment.

11

**B. CID**

Ironshore contends that it is not obligated to defend or indemnify 23andMe with respect to the CID issued by the Washington Attorney General because the CID does not qualify as a "claim" under the policy. As set forth above, the policy obligates Ironshore to "pay **Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** alleging a **Wrongful Act**." Policy § I.B., Exh. 1 to Bromfield Decl., ECF 50-2 (bold in original). "**Claim** means a written demand for **Damages**, services or other non-monetary relief." Policy § VII.F, Exh. 1 to Bromfield Decl., ECF 50-2 (bold in original). "A **Claim** includes a **Suit**." *Id.* (bold in original). "Suit" in turn is defined as follows:

> **Suit** means a civil proceeding seeking recovery of **Damages** (or **Damages** plus services or other non-monetary relief) because of a **Wrongful Act**, **Bodily Injury** or **Property Damage** to which this insurance applies. Suit includes a civil legal proceeding as well as an arbitration proceeding or alternative dispute resolution proceeding in which such **Damages** are claimed and to which the insured must submit or does submit with our consent. **Suit** does not include a criminal proceeding.

Policy § VII.AAA, Exh. 1 to Bromfield Decl., ECF 50-2 (bold in original).

It is undisputed that the Washington Attorney General issued the CID in March 2014, demanding that 23andMe provide interrogatory responses and production of documents. It likewise is undisputed that in the more than two years since issuance of the CID, the Washington Attorney General has not filed a "claim" or "suit" against 23andMe. 23andMe nonetheless requests that the Court deny Ironshore's motion for summary judgment as to the CID because the Washington Attorney General may, in the future, file a "claim" or "suit" that would be covered under the policy.

Ironshore is entitled to summary judgment that it has no present duty to defend or indemnify 23andMe with respect to the CID. "The duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 886 (1998) (internal quotation marks and citation omitted). "Prior to the filing of a complaint, there is nothing for the insured *to tender defense of,* and hence no duty to defend arises." *Id.* Based on those principles, the Court in *Foster-Gardner* held that site investigation expenses incurred prior to the filing of a lawsuit against the insured were not defense

costs that the insurer had to incur. *Id.* Under the same reasoning, Ironshore has no present duty to incur expenses or otherwise defend 23andMe in connection with the CID. In the event that the Washington Attorney General files a future "claim" or "suit" within the terms of the policy, 23andMe may tender that claim or suit.

Ironshore's motion for summary judgment that it has no present duty to defend or indemnify 23andMe with respect to the CID is GRANTED.

## IV. ORDER

Ironshore's motion for summary judgment is GRANTED with respect to its defense that the CID is not a covered "claim" under the policy and DENIED with respect to its defense that coverage for the underlying class actions is excluded under the Contractual Liability Exclusion.[9]

Dated: July 22, 2016

*/s/ Beth Labson Freeman*
BETH LABSON FREEMAN
United States District Judge

---

[9] The Court recognizes that its denial of summary judgment on the Contractual Liability Exclusion is not dispositive of coverage. Ironshore has asserted a number of other coverage defenses as to which the Court has stayed litigation pending resolution of the underlying actions. *See* Order Granting in Part and Denying in Part Motion for Stay, ECF 48.