# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>23ANDME, INC.,<br><br>　　　　Defendant,<br>_____<br><br>AND RELATED COUNTERCLAIM. | Case No. 14-cv-03286-BLF<br><br>**ORDER GRANTING IRONSHORE'S MOTION TO DISMISS COUNTS 2 AND 3 OF THE COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSES**<br><br>[Re: ECF 94] |

This action arises out of an insurance coverage dispute between Plaintiff-Counterdefendant Ironshore Specialty Insurance Company ("Ironshore") and Defendant-Counterclaimaint 23andMe, Inc. ("23andMe"). Currently before the Court is Ironshore's motion to dismiss counts 2 and 3 of 23andMe's counterclaim under Federal Rule of Civil Procedure 12(b)(6) and to strike 23andMe's affirmative defenses under Federal Rule of Civil Procedure 12(f). For the reasons discussed below, Ironshore's motion is GRANTED WITH LEAVE TO AMEND.

**I. BACKGROUND[1]**

23andMe provides a "personal genome service" to consumers who wish to access and understand their personal genetic information. Answer & Counterclaim ¶ 6, ECF 85. 23andMe delivers saliva collection kits to customers, and the customers return saliva samples to 23andMe

---

[1] The background section is drawn from facts admitted in 23andMe's answer and pled in 23andMe's counterclaim. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (well-pled factual allegations of counterclaim are accepted as true for purposes of a motion to dismiss under Rule 12(b)(6)).

for testing. *Id.* During the time frame relevant to this action, 23andMe provided customers with "raw genetic data (the 'DNA Data'), information and tools that enabled them to trace their ancestry, build a family tree, and locate relatives (the 'Ancestry Component'), and an overview report of personal genetic traits and a variety of health information (the 'Health Component'). *Id.*

Several legal proceedings were commenced against 23andMe, including a class arbitration complaint before the American Arbitration Association ("AAA") titled *Davis-Hudson v. 23andMe, Inc. See* Answer & Counterclaim ¶¶ 30-31, 48. 23andMe tendered the defense of the *Davis-Hudson* arbitration to Ironshore under a policy that Ironshore issued to 23andMe. *Id.*

Ironshore accepted the defense of the actions under a reservation of rights and filed the present lawsuit in July 2014 ("coverage action"), seeking a declaration that it has no duty to defend or indemnify 23andMe in *Davis-Hudson* or in the other underlying actions. *See* Compl., ECF 1. 23andMe moved to stay the coverage action pending resolution of *Davis-Hudson* and the other underlying actions. *See* Motion to Stay, ECF 26. The Court granted the stay motion in part, but it permitted Ironshore to proceed on two of its coverage defenses. *See* Order Granting in Part and Denying in Part Motion for Stay, ECF 48. The Court subsequently granted in part and denied in part Ironshore's motion for summary judgment with respect to those defenses. *See* Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, ECF 66.

23andMe kept Ironshore updated as to the progress of the *Davis-Hudson* arbitration, including settlement efforts. Answer & Counterclaim ¶¶ 170-206. On June 3, 2017, 23andMe informed Ironshore of a settlement demand made by the *Davis-Hudson* class counsel. *Id.* ¶ 192. The proposed settlement would entail payment of approximately $1 million in cash damages, approximately $1 million in discount coupons, and between $1.5 and $2.5 million in attorneys' fees. *Id.* ¶¶ 198-99. Approximately two weeks later, Ironshore responded, stating that it lacked sufficient information to consent to the proposed settlement and requesting information including mediation statements and other materials that 23andMe considered to be privileged. *Id.* ¶ 196. The parties then engaged in back-and-forth correspondence for several weeks, with 23andMe seeking approval of the proposed settlement and Ironshore seeking more information. *Id.* ¶¶ 197-205. On July 18, 2017, 23andMe demanded that Ironshore provide a final response by July 20,

2017, stating that the arbitrator had set that deadline for receipt of executed settlement documents. *Id.* ¶ 206.

On July 20, 2017, Ironshore's counsel sent 23andMe's counsel email correspondence provisionally consenting to the proposed settlement, subject to certain conditions. Answer & Counterclaim ¶ 207, ECF 85; July 20 Letter, Exh. 1 to Ironshore's Motion to Dismiss, ECF 93-1.[2] Those conditions were as follows: (1) Ironshore reserved the right to withdraw consent if the settlement materially changed from the version provided to it or if 23andMe withheld material information concerning the settlement; (2) Ironshore reserved the right to dispute in the coverage action any allocation of the settlement to warranty claims (covered under the policy) as opposed to other claims (not covered under the policy), on the basis that such allocation was the product of fraud and collusion between 23andMe and the *Davis-Hudson* plaintiffs; (3) Ironshore reserved the right to assert in the coverage action all defenses to the settlement; and (4) Ironshore reserved all of its coverage defenses. July 20 Letter, Exh. 1 to Ironshore's Motion to Dismiss, ECF 93-1.

On August 7, 2017, 23andMe requested that Ironshore consent to a $2.25 million attorneys' fees award in *Davis-Hudson.* Answer & Counterclaim ¶ 210. Ironshore provisionally consented on August 25, 2017, subject to the same conditions articulated in its July 20, 2017 letter. *Id.* ¶ 214.

On May 22, 2018, the Court lifted the stay at the parties' request following the state court's confirmation of the arbitration award and entry of judgment in *Davis-Hudson*. *See* Order Lifting Stay, ECF 82. On May 24, 2018, Ironshore filed an amended complaint, reasserting its claim for declaratory judgment on the coverage issue and adding claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Am'd Compl., ECF 83. 23andMe filed its Answer and Counterclaim on June 6, 2018. *See* Answer & Counterclaim, ECF 85. 23andMe asserts six affirmative defenses: (1) failure to state a claim, (2) laches, (3) unclean hands, (4) waiver and estoppel, (5) performance excused, and (6) accord and satisfaction. *See id.*

---

[2] Although 23andMe did not provide a copy of the July 20, 2017 letter as an exhibit to its Answer & Counterclaim, the Court may consider the copy of the letter provided by Ironshore as an exhibit to its motion to dismiss under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Additionally, 23andMe asserts three counts for relief in its counterclaim: (1) declaratory judgment, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing. *See id*.

Ironshore moves to dismiss counts 2 and 3 of the counterclaim under Rule 12(b)(6) and to strike the affirmative defenses under Rule 12(f). The Court heard oral argument on October 25, 2018.

## II. MOTION TO DISMISS

### A. Legal Standard

"A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as [a] motion to dismiss a plaintiff's complaint." *Ironworks Patents LLC v. Samsung Elecs. Co.*, No. 17-CV-01958-HSG, 2018 WL 1400440, at *1 (N.D. Cal. Mar. 20, 2018) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Discussion

Ironshore moves to dismiss counts 2 and 3 of 23andMe's counterclaim.

Count 2 is for breach of contract. "To prevail in a breach of contract suit, a plaintiff must allege all the elements of the claim, including defendant's breach of a contract term." *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015). Plaintiff alleges breach of a contract term in the most conclusory of fashions, stating only that "Ironshore has breached the Policy as hereinabove alleged," and that "23andMe has been damaged by Ironshore's conduct and is entitled to damages and/or other relief for Ironshore's breach of contract." Answer & Counterclaim ¶¶ 221-22, ECF 85. No facts regarding the alleged breach are provided. 23andMe does not identify which provision or provisions of the policy it believes Ironshore breached, either in count 2 itself or in the preceding allegations which are incorporated into count 2. *See* Answer & Counterclaim ¶¶ 160-222. 23andMe thus has failed to allege facts sufficient to make out a plausible claim for

4

breach of contract. *See Ewert*, 602 F. App'x at 359 (affirming dismissal of contract claim where plaintiffs failed to identify any particular provision of the User Agreement alleged to have been breached); *Shrem v. Sw. Airlines Co.*, No. 15-CV-04567-HSG, 2016 WL 4170462, at *4 (N.D. Cal. Aug. 8, 2016) (concluding that where "[t]he complaint fails to identify which contract terms were breached. . . . Plaintiffs have failed to state a plausible claim for relief, and thus dismissal with leave to amend is warranted.").

Count 3 is for breach of the implied covenant of good faith and fair dealing. "'The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013) (quoting *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979)). 23andMe alleges that "Ironshore breached the covenant of good faith and fair dealing in connection with refusing to agree to, or otherwise improperly conditioning its consent to, the *Davis-23*andMe [sic] was therefore entitled to pay all amounts due as a result of the *Davis-Hudson* settlement of covered Claims, and to be indemnified and reimbursed by Ironshore for all settlement consideration in *Davis-Hudson*, including reasonable attorneys' fees to class counsel in the amount of $2.25 million." Answer & Counterclaim ¶ 224, ECF 85. While the allegation is somewhat muddled as a result of what appears to be a typographical error, the Court understands 23andMe to be alleging a bad faith claim based on Ironshore's alleged refusal to consent to the *Davis-Hudson* settlement or conditional consent to the *Davis-Hudson* settlement.

It is apparent from the face of 23andMe's pleading that Ironshore in fact consented to the *Davis-Hudson* settlement and, later, to a $2.25 million attorneys' fees award. *See* Answer & Counterclaim ¶ 207 (alleging that Ironshore provisionally consented to the settlement); ¶ 214 (alleging that Ironshore provisionally consented to a $2.25 million attorneys' fees award). Accordingly, 23andMe has failed to allege a bad faith claim based on Ironshore's lack of consent. To the extent that 23andMe bases its bad faith claim on the fact that Ironshore's consent to the *Davis-Hudson* settlement was conditional, it appears from the face of the July 20, 2017 letter that the conditions articulated therein were nothing more than Ironshore's reservation of its rights to

raise all legally permissible defenses in the coverage action. Even if 23andMe could establish that the conditions articulated in the July 20, 2017 letter did constitute bad faith, 23andMe has not alleged facts showing that those conditions injured 23andMe's rights to receive benefits under the policy. Accordingly, 23andMe has failed to state a claim for insurance bad faith under either of the theories it has pled.

In its opposition, 23andMe asserts a new theory of bad faith based on Ironshore's requests for mediation materials prior to, and delay in, consenting to the *Davis-Hudson* settlement. *See* Opposition at 6-13, ECF 94. "[T]he implied covenant of good faith and fair dealing obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured." *Great Am. Ins. Co. v. Quintana Homeowners Ass'n*, No. 5:17-CV-00693-EJD, 2018 WL 3632111, at *3 (N.D. Cal. July 31, 2018) (quotation marks and citation omitted). "If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach." *Id.* The Court is not in a position to evaluate 23andMe's new theory of bad faith, because it has not been pled. 23andMe may allege facts supporting a bad faith claim under the theory articulated in its opposition when it amends its counterclaim. As to all claims, 23andMe must allege facts showing harm caused by the alleged unlawful conduct.

The motion to dismiss counts 2 and 3 of the counterclaim is GRANTED WITH LEAVE TO AMEND.

### III. MOTION TO STRIKE

#### A. Legal Standard

A court may strike affirmative defenses under Federal Rule of Civil Procedure 12(f) if they present an "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A defense is insufficiently pled if it fails to give the plaintiff fair notice of the nature of the defense. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). While the Ninth Circuit has not yet determined whether the pleading standards set forth in *Iqbal* and *Twombly* apply to affirmative defenses, numerous courts in this district have concluded that they do. *See Hartford Underwriters Ins. Co. v. Kraus USA, Inc.*, 313 F.R.D. 572, 574 (N.D. Cal.

2016) (collecting cases).

## B. Discussion

Whether the Court applies the *Iqbal*/*Twombly* standard or some lesser standard, 23andMe's affirmative defenses clearly are deficient. They are entirely conclusory in that they are unsupported by any factual allegations whatsoever. 23andMe's suggestion that the relevant facts may be filled in by referring to the counterclaim is unpersuasive, as the counterclaim is set forth *after* the affirmative defenses and therefore could not have been incorporated into the affirmative defenses.

Accordingly, the motion to strike the affirmative defenses is GRANTED WITH LEAVE TO AMEND. In light of 23andMe's concession that failure to state a claim is not a proper affirmative defense, the Court presumes that defense will not be re-pled. The Court also expects that 23andMe will correct the clerical error in the numbering of its affirmative defenses.

## IV. ORDER

Ironshore's motion to dismiss counts 2 and 3 of the counterclaim and to strike the affirmative defenses is GRANTED WITH LEAVE TO AMEND. Any amended Answer & Counterclaim shall be filed on or before November 16, 2018.

Dated: October 26, 2018

BETH LABSON FREEMAN
United States District Judge